David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiffs,
CHRIS W. & JENNIFER W.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS W. & JENNIFER W.<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE HEALTH PLAN; BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFFS CHRIS W. AND JENNIFER W.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; ATTORNEYS' FEES AND COSTS; JURY TRIAL DEMANDED** |

Plaintiffs, Chris W. and Jennifer W. herein set forth the allegations of this Complaint against Defendants PROVIDENCE HEALTH PLAN; BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS; and DOES 1 through 10.

## PRELIMINARY ALLEGATIONS

### JURISDICTION

1. This action involves the denial of medically necessary health care by two separate health insurers, Providence Health Plan ("Providence") and Blue Cross of California dba Anthem Blue Cross ("Anthem").

2. As set forth below, the actions of one health plan are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), while state law governs the actions of the other health plan.

3. Accordingly, Plaintiffs bring this action in part for relief pursuant to Section 502 (a) (1) (B) ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B). This Court has subject matter jurisdiction over the relevant claims pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 to the extent it involves health care claims made by Plaintiffs for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

4. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiffs' rights under the terms of an employee benefit plan named as a Defendant. This action is also brought for the purpose of recovering benefits under the terms of a non-ERISA governed employee benefit plan.

**PARTIES**

5. Plaintiffs are, and at all times relevant were, residents of Oregon.

6. At all relevant times, Plaintiff Chris W. was an employee of the Department of Fish and Wildlife for the State of Oregon.

7. At all relevant times, Plaintiff Jennifer W. was an employee of Intel, Corporation.

8. At all relevant times, Chris W. participated in the Public Employees Benefit Board Statewide PPO Plan ("the PEBB Plan"), an employee welfare benefit plan, sponsored by Chris W.'s employer, The State of Oregon. Providence Health Plan is the Plan administrator. All causes of action against Providence are brought under the relevant state law.

9. Providence Health Plan ("PROVIDENCE") is a health insurance provider currently transacting the business of insurance in the State of Oregon, and is the claims administrator of the PEBB Plan.

10. Blue Cross of California dba Anthem Blue Cross ("ANTHEM") is a health insurance provider currently transacting the business of insurance in the State of California, and is the claims administrator of the Plan.

COMPLAINT                                                                 CASE NO.

11. At all relevant times, Jennifer W. participated in the Intel, Corporation's Anthem HDHP Plan ("the Anthem Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by Jennifer W.'s employer, Intel, Corporation ("Intel"). Intel is the Plan administrator.

12. At all relevant times, the PEBB Plan was an insurance plan that offered, *inter alia*, mental health benefits for employees and their beneficiaries, including Plaintiffs' family. This action involves mental health claims denied by the PEBB Plan's mental health claim administrator, PROVIDENCE.

13. At all relevant times, the Anthem Plan was an insurance plan that offered, *inter alia*, mental health benefits for employees and their beneficiaries, including Plaintiffs' family. This action involves mental health claims denied by the Anthem Plan's mental health claim administrator, ANTHEM.

**FACTS**

14. The PEBB Plan and the Anthem Plan guarantee, warrant, and promise coverage for "Medically Necessary" health services, care and treatment, including by not limited to: health care services, mental health care, and treatment at issue herein.

15. P.K.W. is Plaintiffs Chris W. & Jennifer W.'s daughter, and was, at all relevant times, a beneficiary of the PEBB Plan and the Anthem Plan.

16. At all relevant times the PEBB Plan and the Anthem Plan were in full force and effect.

17. The PEBB Plan is the primary insurance plan which P.K.W. was insured.

18. The Anthem Plan is secondary insurance plan which P.K.W. was insured.

19. Mental Health claims under the Providence Plan were at all relevant times administered by PROVIDENCE.

20. Mental Health claims under the Anthem Plan were at all relevant times administered by Anthem UM Services Inc.

21. Anthem UM Services, Inc. is a subsidiary of Blue Cross of California dba Anthem Blue Cross.

22. The PEBB Plan uses guidelines referred to "Providence Health Plan Guidelines" when administering mental health claims.

23. No PEBB Plan document sets forth the Providence Health Plan Guidelines.

24. Anthem UM Services, Inc. uses guidelines referred to as "Anthem UM Guidelines" when administering mental health claims.

25. No Plan document sets forth the Anthem UM Guidelines.

26. Under the terms and conditions of the Policy, to qualify for residential treatment relating to psychiatric disorder treatment, the covered individual's symptoms or condition must meet the criteria for Medical Necessity.

27. Medically Necessary and Medical Necessity services as defined under the PEBB Plan are "services that are necessary to diagnose or meet the reasonable health needs of the member, clinically significant, demonstrate value, improved functional capacity, recommended by a qualified practitioner, rendered in the most cost-efficient manner consistent with nationally recognized standard of care, and consistent in type, frequency and duration with scientifically based guidelines of national medical, research, or health care coverage organizations that are accepted by the Plan.

28. Medically Necessary and Medical Necessity services as defined under the Anthem Plan are "health care services that a Physician, exercising professional clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, or disease or its symptoms, and that are: in accordance with generally accepted standards of medical practice; and clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the Member's illness, injury or disease."

29. California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses.

30. P.K.W. suffers from, and was diagnosed with, *inter alia,* depressive disorder, posttraumatic stress disorder, attention-deficit/hyperactivity disorder ("ADHD"), bipolar disorder, parent-child relational problem, and suicidal ideations and attempts.

31. P.K.W. has a long history of mental illness and serious emotional disturbances, which at all times relevant, only worsened and became more acute.

32. From an early age, P.K.W. was diagnosed with ADHD, combined type and psychotic disorder, depression disorder, and anxiety disorder. She began weekly therapy to address her pervasive mental health issues.

33. As a result of her multiple mental health issues, P.K.W. exhibited severe bouts of mania and violent outbursts. She was a danger to herself and others.

34. Despite ongoing therapy and medication, P.K.W.'s mental health issues exacerbated. She repeatedly cut herself. She assaulted her peers, resulting in an expulsion from school. She frequently ran away from home.

35. At 15 years old, P.K.W. deteriorated fully. She refused to eat. She refused to shower, brush her teeth, and maintain feminine hygiene.

36. In addition to her suffering hygiene, P.K.W. expressed homicidal ideation and fanaticized torturing humans. She refused to leave the house and would throw fits of violent rage outbursts. She frequently stole sharp objects and cut herself.

37. Due to the severity of her declining mental health, P.K.W.'s mental health providers recommended, as medically necessary, that P.K.W. attend residential treatment.

38. At the recommendation of her multiple mental health providers, P.K.W. was admitted to, and attended, Parry Center for Children ("Parry"), a residential treatment center in Portland, Oregon.

39. P.K.W. completed the 6-week program at Parry and returned home and continued mental health treatment at Trillium Family Services, an outpatient day program.

40. Despite this treatment, P.K.W. decompensated again. P.K.W. self-harmed, threatened suicide, and refused to eat. Her treating mental health providers recommended that she be admitted to a residential treatment center.

41. Because of her conditions, treatment history, and based upon the recommendations of her health care providers and therapists, P.K.W. was referred and admitted to Uinta Academy ("Uinta").

42. At all times relevant, P.K.W.'s treatment at Uinta was medically necessary, in accordance with generally accepted standards of medical practice, based upon the reasoned medical opinions of her mental health providers.

COMPLAINT                                                                                                          CASE NO.

43. Plaintiffs filed claims with PROVIDENCE for mental health benefits with Defendants for P.K.W.'s treatment at Uinta.

44. PROVIDENCE denied Plaintiffs' claims.

45. Plaintiff timely appealed PROVIDENCE's denials.

46. PROVIDENCE denied Plaintiffs' appeals.

47. Plaintiffs also filed claims with ANTHEM for mental health benefits with Defendants for P.K.W.'s treatment at Uinta.

48. ANTHEM, by and through Anthem UM Services, Inc. denied Plaintiffs' claims.

49. Plaintiffs timely appealed ANTHEM's denials.

50. Anthem UM Services, Inc. denied Plaintiffs' appeals.

51. Despite the mandates of the California and Federal Mental Health Parity Acts, the medical necessity of P.K.W.'s treatment at Uinta based on her symptoms and diagnoses, and the medical consensus among her treating providers, Defendants PROVIDENCE and ANTHEM denied all of Plaintiffs' claims and appeals.

52. Plaintiffs have exhausted all administrative remedies regarding the denial of P.K.W.'s mental health benefits.

53. As a result, Plaintiffs were forced to pay for P.K.W.'s care and treatment at Uinta from their own personal funds.

## CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against Blue Cross of California dba Anthem Blue Cross, Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

54. Plaintiffs incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

55. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiffs' rights under the terms of a plan.

**COMPLAINT**                                          **CASE NO.**

56. At all relevant times, Plaintiffs and their daughter, P.K.W. were insured under the Anthem health care plan at issue herein, and Plaintiffs' daughter, P.K.W., met the covered health expenses and medical necessity criteria for treatment required under the terms and conditions of the Providence Plan and the Anthem Plan.

57. By denying Plaintiffs' mental health claims, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiffs; rights thereunder.

58. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

**SECOND CAUSE OF ACTION**
**(Breach of the Covenant of Good Faith and Fair Dealing (Insurance Bad Faith)**
**Against PROVIDENCE HEALTH PLAN, and DOES 1 through 10)**

59. Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in this cause of action.

60. At all times herein relevant, PROVIDENCE agreed to act in good faith and deal fairly with Plaintiffs. PROVIDENCE thereby assumed a special relationship with and fiduciary-like obligations to Plaintiffs and agreed to abide by said duties. Nevertheless, PROVIDENCE refused and failed to act in good faith and deal fairly with Plaintiffs, and breached said obligations, as is set forth more particularly in this Complaint.

61. In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, PROVIDENCE failed and refused to provide Plaintiffs the benefits promised under the Policy, under the laws of California.

62. PROVIDENCE engaged and continues to engage in conduct to further its own economic interest and in violation of its contractual and fiduciary obligations to Plaintiffs, including but not limited to:

    a. Unreasonably denying the benefits of the Policy;

    b. Misrepresenting pertinent policy provisions and coverages at issue;

    c. Misrepresenting medical evidence;

    d. Misrepresenting and or disregarding the opinions of treating physicians and therapists;

e. Denying benefits based on insufficient, inadequate, and biased medical analyses;

f. Repeated denials and requirements for appeals;

g. Failing to place the financial interests of its insureds on an equal par with Defendant's own financial interests;

h. Failing to objectively evaluate Plaintiffs' claim and attempting to find reasons not to pay their claim;

i. Failing to conduct a full and fair investigation;

j. Conducting a medical analysis of the claim by medical personnel who sought to provide a pretext for denying Plaintiffs' claim, instead of looking for reasons to pay the claim and instead of crediting the wealth of medical information establishing Medical necessity, as defined under the terms and conditions of the

Policy;

k. Failing to consider the requirements of the California Mental Health Parity Act, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for overturning PROVIDENCE's claim denial(s) at issue herein; and

l. Shifting the burden of investigation onto its insureds.

m. Engaging in an unlawful pattern of practice for denying medically necessary residential treatment in order to save money and increase profits.

63. In doing the acts listed above, PROVIDENCE breached the covenant of good faith and fair dealing, and engaged in unfair claim settlement practices.

64. PROVIDENCE continues to engage in the aforementioned acts and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing continued damage as described herein beyond the date of the filing of this action.

65. As a direct and proximate result of the aforementioned conduct of PROVIDENCE, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court, to be determined at trial.

COMPLAINT                                                                                                              CASE NO.

66. As a further direct and proximate result of the aforementioned conduct of PROVIDENCE, Plaintiff suffered financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and have thereby incurred general damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

67. As a further, direct and proximate result of the aforementioned conduct of PROVIDENCE, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

68. As a further, direct and proximate result of the aforementioned conduct of PROVIDENCE, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, Plaintiff's inability to replace the Policy under the terms and conditions represented to them.

69. In doing the acts set forth above, PROVIDENCE acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights in a despicable fashion. Plaintiff is therefore entitled to punitive damages in a sum sufficient to punish and deter Defendants so that such conduct will not take place again.

## PRAYER FOR RELIEF

### AS TO BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

70. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

71. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

72. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

73. Provide such other relief as the Court deems equitable and just.

**AS TO ALL CAUSES OF ACTION:** For such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

### AS TO PROVIDENCE HEALTH PLAN

74. General damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the payments which Plaintiffs paid to Uinta;

75. General damages for mental and emotional distress and other incidental damages in a sum to be determined at trail;

76. Punitive and exemplary damages;

77. Treble damages as allowed under Cal. Civil Code §3345

78. Special damages in an amount according to proof;

79. For costs of suit herein incurred; ;

80. For reasonable attorneys' fees; and

81. For such other and further relief as the Court deems just and proper.

Dated: July 7, 2020                             Respectfully submitted,

**DL LAW GROUP**

By: /s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiffs, Chris W. and Jennifer W.

10
**COMPLAINT**                                                               **CASE NO.**